IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  5:18CR148 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| DANTE WINNICK, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Assistant United States Attorney, Danielle K. Angeli, respectfully submits this sentencing memorandum for Defendant Dante Winnick ("Defendant").  For the reasons set forth in the attached memorandum, the United States respectfully requests that the Court sentence Winnick to a high-end Guidelines sentence of 30 months.

                    Respectfully submitted,

                    JUSTIN E. HERDMAN
                    United States Attorney

By:   /s/ Danielle K. Angeli
        Danielle K. Angeli (MI: P81362)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3875
        (216) 522-8354 (facsimile)
        Danielle.Angeli@usdoj.gov

I.      **Factual Background**

On June 22, 2011, Defendant was convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), in Case Number 1:11CR00038-001, in the Northern District of Ohio.  (R. 14: Presentence Investigation Report "PSR", ¶ 6, PageID 76).  Chief Judge Patricia A. Gaughan sentenced Defendant to 53 months in custody followed by three years of supervised release.  (*Id.*).  Defendant was released from custody on January 13, 2015, and began his term of supervised release.  (*Id.*).  On June 30, 2017, the court revoked Defendant's term of supervised release and sentenced Defendant to 13 months in custody with no supervised release to follow.  (*Id.* ¶ 7).  On February 14, 2018, Defendant arrived at the Oriana Halfway House in Akron, Ohio, from Federal Correctional Institute Hazleton, to finish his custody sentence.  (*Id.*).

On March 11, 2018, Defendant met with his case manager at the Oriana House to explain that a loved one had died, however, Defendant did not submit a request to attend the funeral.  (*Id.* ¶ 8).  Two days later, Defendant left the Oriana House without authorization and never returned.  (*Id.* ¶ 9).  Oriana House could not make contact with Defendant, and the lead resident supervisor, program coordinator, and Defendant's caseworker could not remember Defendant returning or trying to return to the Oriana House after Defendant left the facility.  (*Id.*).

On September 15, 2018, the Cleveland Police Department responded to a report of an assault on a female victim.  When officers arrived, emergency medical services were treating the victim, and were getting ready to bring her to the hospital for treatment.  Officers traveled the hospital and spoke with the victim.  She told officers that she was in a car with a male friend when Defendant approached the car and pulled her out of it.  The male friend left the scene, and the victim and Defendant began to walk towards her friend's house.  While walking, the victim became afraid of Defendant so she ran to her friend's house.  While the victim was at her

friend's house, the victim told officers that Defendant came into the home and began to assault her with his hands. She explained that Defendant then picked up a cane that was in the room and struck her in the head. He then picked up a baseball bat and began to strike her in the head, left arm, and right leg. While Defendant was striking the victim, he told her "b---- you going to die." Officers observed a large bruise on the victim's left bicep. The victim explained that when Defendant struck her in the head, she had a seizure, and when she woke up, Defendant was gone. (*Id.* ¶ 10, PageID 77); *see also* (Ex. 1: Cleveland Police Report dated 9/15/18).

Roughly one month later, on November 20, 2018, it is alleged that Defendant committed Aggravated Robbery with a Firearm Specification and Robbery. (*Id.* ¶ 11). On March 19, 2019, a grand jury returned an indictment charging Defendant with these two offenses in Case Number CR-19-637929, in the Cuyahoga County Court of Common Pleas. (*Id.*). Specifically, on November 20, 2018, the Cleveland Police Department received a radio broadcast to respond to a Rite Aid on Superior that was being robbed. Upon arrival, officers received a call that the suspect was running back and forth through the yards on East 58th and Prosser. Workers stopped officers near East 55th and Spencer, and explained that a male fitting the description of the robber—a black male wearing a black hoodie with khaki pants and a ski mask on his face— dropped his coat that also had a cell phone in it on the ground in front of them while he was running down the street. Officers retrieved the coat and cell phone as evidence, then went to Rite Aid to interview the victim-employee. The victim-employee provided a description of the robber and explained that the robber pointed his pocket towards the victim-employee like the robber had a gun in his coat and told the victim-employee to give him the money. The victim-employee put the money in a white Rite Aid bag, which the robber grabbed and then fled northbound on East 53rd Street. *See* (Ex. 2: Cleveland Police Report dated 11/20/18).

On November 21, 2019, officers responded to a call that a man found property near the Rite Aid that he believed was connected to a crime.  The man explained that he was blowing the leaves around 10:00 in the morning and noticed a black Under Armor hoodie, black face mask, and black knit cap, next to the building in the vacant lot.  (Ex. 3: Cleveland Police Report dated 11/21/18).

Further investigation revealed that there were numerous robberies in the area with the suspect fitting the same description.  Officers associated this robbery with a pattern of robberies involving Defendant's roommate during that time period.  The two men lived in an apartment across the street from the Rite Aid that was robbed in November and December 2018.  Officers conducted further interviews with the employee-victim and other employees at the Rite Aid.  Most of the employees were convinced that Dante from the apartment across the street had committed the robbery, but his face was covered with a mask, and there were no witnesses that could directly identify Defendant.  A detective reviewed surveillance video and noted that the robber matches the Defendant's height and weight.  Officers also obtained a search warrant for the suspect's phone and determined that Defendant owned the phone.  (Ex. 4: Cleveland Police Report dated 1/16/19).

On November 26, 2018, Cleveland Police Department officers arrested Defendant for obstructing official business.  Officers responded to the area to assist with an aggravated robbery suspect.  The man would not provide officers with his identifying information, so officers transported him to the police station for further questioning in connection with the Rite Aid robbery.  While at the station, officers attempted to identify him, and he provided two false names.  Defendant eventually provided the officers with his true name, which detectives

confirmed, and he was charged with obstructing official business. (R. 14: PSR ¶ 12, PageID 77); *see also* (Ex. 5: Cleveland Police Report dated 11/26/18).

## II. The PSR Properly Calculated Defendant's Guidelines Range.

The PSR properly calculated Defendant's base offense level as 13. (*Id.* ¶ 20, PageID 78); U.S.S.G. § 2P1.1(a)(1). If the Court determines a two-level reduction for acceptance of responsibility is appropriate, Defendant's total offense level would be 11. Defendant's criminal convictions result in a subtotal of 10 criminal history points, and two points are added because Defendant committed the instant offense while under a criminal justice sentence for Escape, in Case Number CR-16-603084, in the Cuyahoga County Court of Common Pleas, and while under a term of imprisonment for being a felon in possession of a firearm, in Case Number 1:11CR00039-1, in the Northern District of Ohio. (*Id.* ¶ 43, PageID 87); U.S.S.G. § 4A1.1(d). Therefore, Defendant's criminal history category is V, which results in an advisory Guidelines range of 24 to 30 months, located in Zone D. (*Id.* ¶¶ 69, 74, PageID 92).

Defendant's objection to the PSR, which argues that he should be awarded a four-level reduction under § 2P1.1(b)(3)[1] because he did not commit any federal, state, or local offense punishable by a term of imprisonment of one year or more, is meritless. *See* (*id.*, PageID 98). Defendant is ineligible for the reduction in light of the allegations that he committed felonious assault and aggravated robbery, both of which are offenses punishable by a term of imprisonment of more than one year in Ohio.[2] Section 2P1.1(b)(3) provides that "this reduction

---

[1] The objection in the PSR notes that Defendant objected under § 2P1.1(b)(2), however, the four-level reduction for not committing another felony offense is found in § 2P1.1(b)(3).

[2] Ohio Revised Code Section 2903.11 provides that felonious assault is a felony of the first or second degree, both of which are punishable by a term of imprisonment of more than one year. Further, aggravated robbery, as set forth in Ohio Revised Code Section 2911.01, is a felony of

5

shall not apply if the defendant, while away from the facility, *committed* any federal, state, or local offense punishable by a term of imprisonment of one year of more." U.S.S.G. § 2P1.1(b)(3) (emphasis added).

In *United States v. Strachan*, 968 F.2d 1161 (11th Cir. 1992), the Eleventh Circuit rejected the defendant's argument that he needed to be convicted of a felony offense to be ineligible for the four-level reduction under § 2P1.1(b)(3). *Id.* at 1162. The court noted that the Sentencing Commission chose to use the word "committed," not "convicted[,]and "[b]ecause the sentencing guidelines do not define 'committed,' this term must be given its ordinary meaning." *Id.* (citing *Chapman v. United States*, 500 U.S. 453 (1991)). It held that the ordinary meaning was clear: a defendant could have "committed" an offense even if he was not formally "convicted" of it. *Id.* As such, it upheld the district court's refusal to apply the reduction under § 2P1.1(b)(3), opining that the district court "can deny the reduction if a preponderance of the evidence demonstrates that the defendant committed a disqualifying offense, even if there has been no formal conviction." *Id.* at 1162-63; *see also* U.S.S.G. § 6A1.3, comment. (backgr'd) ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."). Thus, § 2P1.1(b)(3) does not require a conviction or even an indictment—although Defendant has been indicted on the aggravated robbery charges— to make Defendant ineligible for this reduction. The United States submits that the PSR and the attached police reports demonstrate by a preponderance of the evidence that Defendant

---

the first degree, and robbery, as set forth in Ohio Revised Code Section 2911.02, is a felony of the third degree, both of which are punishable by a term of imprisonment of more than one year. *See* Ohio Revised Code § 2929.14(A).

6

committed felonious assault, aggravated robbery, and robbery, while away from the Oriana House. Therefore, the PSR correctly calculated Defendant's total offense level as 11.

### III. The § 3553(a) Factors Support a High-End Sentence of 30 Months.

Considering the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, a high-end Guidelines sentence of 30 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, and to afford adequate deterrence.

Although Defendant informed his case manager at the Oriana House that a loved one had died, Defendant never obtained permission to attend the funeral. Further, Defendant did not return after the funeral, and he had no additional contact with the lead resident supervisor, program coordinator, his assigned caseworker, or anyone else employed by the Oriana House after the funeral. This is a serious offense, however, the United States submits that his violent behavior while on escape status is what warrants a high-end Guidelines sentence. Defendant is alleged to have engaged in a violent felonious assault, striking a woman with a baseball bat numerous times in the head, arm, and leg, causing the victim to have a seizure. One month later, Defendant is alleged to have participated in an aggravated robbery involving a firearm, and a grand jury has returned an indictment charging Defendant with this crime. Further, when officers attempted to question Defendant about the robbery, he obstructed justice and provided two false names. As a convicted felon, Defendant is aware that he cannot lawfully possess a firearm. Indeed, he was serving a federal sentence for being a felon in possession of a firearm. Defendant's behavior while on escape status presented a great danger to the two victims and the public. Therefore, a high-end Guidelines sentence will reflect the seriousness of the offense, promote respect for the law, and provide a just punishment.

The United States further submits that such a sentence will provide adequate deterrence to future criminal conduct by Defendant and others.  Indeed, Defendant's criminal history involves aggravated trafficking, (R. 14: PSR, ¶ 32, PageID 80), having weapons under disability, (*id.*), attempted aggravated arson, (*id.* ¶ 33), possession or trafficking of counterfeit controlled substances, (*id.* ¶ 36, PageID 82), escape, (*id.* ¶¶ 38, 40, 41, 43, PageID 84-85, 87), and being a felon in possession of a firearm, (*id.* ¶ 42).  His criminal history includes firearms charges and demonstrates a pattern of violating the law.  The instant offense shows that his prior sentences—particularly those for escape and being a felon in possession of a firearm—were insufficient to deter Defendant from engaging in violent criminal conduct.  Moreover, Defendant committed the instant offense—as well as the felonious assault and aggravated robbery—while under a criminal justice sentence in the Cuyahoga County Court of Common Pleas and the Northern District of Ohio.  Given Defendant's recidivism, the fact that this is his fifth escape conviction, and his violent behavior while on escape status, a high-end Guidelines sentence is necessary to afford adequate deterrence.  Similarly, this reveals the need to protect the public from Defendant's future crimes.

**IV.     Conclusion**

For these reasons, and for those to be articulated at the sentencing hearing, the United States requests that the Court impose a high-end Guidelines sentence of 30-months imprisonment.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney


/s/ Danielle K. Angeli
Danielle K. Angeli (MI: P81362)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3875
(216) 522-8355 (facsimile)
Danielle.Angeli@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 9th day of May 2019 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                             /s/ Danielle K. Angeli
                                             Danielle K. Angeli
                                             Assistant U.S. Attorney